GERALD C. NICHOL, District Attorney, Dane County
You have asked my opinion whether or not a method of determining an AFDC budget that was formerly used by Dane County is proper in light of recent United States Supreme Court decisions.
The situation involved is where a stranger in an AFDC home may or may not be able to contribute the amount deemed necessary for his own maintenance in the home. You state: *Page 432 
"Until very recently it was the policy of the Dane County Department of Social Services to adjust the AFDC grant upon the reported arrival into the household of the stranger. This was done by adding the stranger to the family unit for purposes of determining each persons share of the basic budget needs, such as fuel, lights, food, and payments on the dwelling for a family of that size. The stranger's share was then deducted from the total basic needs and the remaining shares were deemed to be the allowable amount for the basic needs of the AFDC family. The individual needs of the family was then added to the basic budget and together they totaled the AFDC grant for the family. This computation resulted in a lower total AFDC grant for the family unit than the grant prior to the arrival of the stranger."
Your letter continues:
"I request an opinion as to whether or not this method of computing AFDC grants is proper in light of the recent United States Supreme Court decisions. May the Dane County Department of Social Services continue with this policy or must it, in effect, develop a new policy under which each and every non-paying stranger living under this arrangement is in fact ignored and is allegedly supported at the expense of the taxpayer and the dependent children whose AFDC grant he is sharing with them?"
Where the stranger is a bona fide boarder or roomer who pays in advance, simple budgetary procedures are set forth in the State department's service to clients manual section III, chapter III-81. I presume that the county department follows the prescribed budgetary procedure of the manual in those instances where the income is known. These procedures have been approved by the Department of Health, Education and Welfare as part of the state plan to achieve uniform standards throughout the State in accordance with 42 U.S.C.A. § 602
(a) which provides that: "A State plan for aid and services to needy families with children must (1) provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them," and further, "provide that the state agency *Page 433 
shall, in determining need, take into consideration any other income and resources of any child or relative claiming Aid to Families with Dependent Children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income * * *."
The recent budgetary policy of Dane County outlined in your letter is a reflection of state policy that was in effect prior to the unanimous Supreme Court decision inKing v. Smith (1968), 392 U.S. 309. This decision has had a tremendous impact on welfare litigation and administration. For your convenience the entire conclusion is set forth:
"Alabama's substitute father regulation as written and as applied in this case, requires the disqualification of otherwise eligible dependent children if their mother `cohabits' with a man who is not obligated by Alabama law to support the children. The regulation is therefore invalid because it defines `parent' in a manner that is inconsistent with § 406 (a) of the Social Security Act.42 U.S.C. § 606 (a). In denying AFDC assistance to appellees on the basis of this invalid regulation, Alabama has breached its federally imposed obligation to furnish `aid to families with dependent children * * * with reasonable promptness to all eligible individuals * * *.' 42 U.S.C. § 602 (a) (9) (1964 ed., Supp. II). Our conclusion makes unnecessary consideration of appellees' equal-protection claim, upon which we intimate no views.
"We think it well, in concluding, to emphasize that no legitimate interest of the State of Alabama is defeated by the decision we announce today. The State's interest in discouraging illicit sexual behavior and illegitimacy may be protected by other means, subject to constitutional limitations, including state participation in AFDC rehabilitative programs. Its interest in economically allocating its limited AFDC resources may be protected by its undisputed power to set the level of benefits and the standard of need, andby its taking into account in determining whether achild is needs all actual regular contributions to hissupport. *Page 434 
"All responsible governmental agencies in the Nation today recognize the enormity and pervasiveness of social ills caused by poverty. The causes of and cures for poverty are currently the subject of much debate. We hold today only that Congress has made at least this one determination: that destitute children who are legally fatherless cannot be flatly denied federally funded assistance on the transparent fiction that they have a substitute father." (Emphasis supplied)
The clear import of the language used by the King
court is that need determinations must be based on "actual and regular contributions to his [an AFDC child] support." Accordingly, budgetary computations based on the assumption that income is available when, in fact, it is not, is neither realistic nor legally valid in ascertaining the needs of a dependent child.
The lesson of the King case, supra, is that welfare entitlements cannot be withheld or used as a club to require a desired standard of conduct. In tracing the history of amendments to the Social Security Act, the court noted that the concept of a "worthy person," as initially used in the Act for purposes of eligibility, was clearly discarded by Congress in favor of rehabilitative services as a primary device to correct unacceptable circumstances. The court also noted that where an AFDC home is unsuitable, removal of the children from such home is another possibility offered by the Social Security Act.
Use of the budgetary procedures which have the effect of decreasing the amount of the AFDC grant must be based on contribution of actual income. Otherwise, the dependant [dependent] children in question are penalized by a decrease of aid. In the King case the children were penalized by a denial of the entire AFDC grant. The difference between these two situations appears to be merely a matter of degree.
After the King decision, the Department of Health, Education and Welfare instructed all states that "only such net income as is actually available for current use on a regular basis will be considered" in determining need and amount of assistance. C.F.R. § 233.20 (3) (ii) (c), effective January 29, 1969. *Page 435 
Neither the state nor the county may do as it pleases in programs where Federal reimbursement is expected. As stated by the United States Supreme Court in Rosado v.Wyman (1970), 397 U.S. 397 "When money is spent to promote the general welfare, the concept of welfare or the opposite is shaped by Congress, not the states."
The Rosado court further noted: "We see no justification in principle for drawing a distinction between invalidating a single non-conforming provisionor an entire program." (Emphasis supplied)
I am aware of the administrative convenience and the public interests which may be advanced under policy suggested in your opinion request. A controversial subject, of course, underlies the whole matter. However, the King court stated that Congress had clearly spoken out with respect to this controversial subject. Further, the Department of Health, Education and Welfare has formalized a specific rule concerning the matter. Accordingly, budgetary practices contrary to the rule subjects a county to indeterminate fiscal disallowances by the Federal Government in the AFDC program.
It should be clear in light of the King case and the specifications of the Department of Health, Education and Welfare as provided under C.F.R. § 233.220 (3) (ii) (c) that an AFDC grant may not be reduced by budgeting nonexistent income. Your opinion request indicates this result would be obtained under suggested policy where a stranger, who made no financial contribution, was in an AFDC household. Obviously, a different budgetary policy must be applied to such situations if Federal requirements are to be met.
RWW:WLJ